The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. That all the parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over the parties and this claim, and this claim is subject to the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee at the time of the alleged injury.
3. That Travelers Insurance Company was the insurance carrier on risk at the time of the alleged incident.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of hearing, plaintiff was forty-nine years old. She had been employed by the defendants for approximately 23 years at the time of the alleged injury.
2. Plaintiff worked as a hesse winder the last two years of her employment with defendants. The position of hesse winder required plaintiff to handle material, keep the machine clean, keep records of the machine's operation, change the lithium belt, wash materials, perform maintenance and repairs to the machine. Plaintiff's position required her to do a lot of twisting and pulling motions with her hands. Plaintiff also would lift the various materials used in making the internal part of batteries on a constant basis. Plaintiff would have to scrap between 700 to 1500 cathodes per shift, she would also have to pull the mandrels out of the machine, which required her to lean forward into the machine using both hands to pull the mandrel to get it out of the machine. It would normally take 45 minutes to get the mandrel out of the machine.
3. Plaintiff's position required her to constantly use her hands in a repetitive manner to either lift, push or pull various objects.
4. Plaintiff began to experience tingling and numbness in her hands with the right being worse than the left. She began to drop objects due to loss of grip.
5. In March 1994, plaintiff went to see her family physician concerning the problems she was having with her hands. Dr. Wray initially thought that she had tendinitis of the right elbow.
6. Plaintiff failed to respond to Dr. Wray's course of treatment and he referred her to Dr. Metcalf. Dr. Metcalf diagnosed plaintiff's condition as bilateral carpal tunnel syndrome.
7. Plaintiff was next sent to see Dr. Cregan. Dr. Cregan and Dr. Wray agreed with Dr. Metcalf's diagnosis of plaintiff having bilateral carpal tunnel syndrome with the right being worse than the left.
8. Shortly after plaintiff was informed that she had carpal tunnel syndrome she advised the defendants of her condition and that it was believed that her job was the cause of her problem.
9. Dr. Cregan performed release surgery on plaintiff's right hand. Plaintiff's condition did not improve but continued to get worse even though she was receiving physical therapy and medication.
10. Dr. Cregan later diagnosed plaintiff to be suffering from reflex sympathetic dystrophy and that this condition was a result of the surgery he performed on plaintiff's right hand.
11. Plaintiff worked through July 20, 1994, after which she was taken out of work by her treating physician. Plaintiff has not returned to work as a direct result of her injury.
12. Plaintiff has attempted to return to work but she has not been able to perform either her normal position or any light duty position.
13. Dr. Cregan does not believe that she is able to function in any job due to her present condition. He is uncertain as to whether this is temporary or permanent.
14. Plaintiff's condition was characteristic of and peculiar to her particular occupation as a hesse winder. Further, plaintiff's position placed her at a greater risk than the general public of sustaining her condition.
15. Plaintiff's average weekly wages at the time of the incident herein was $527.04.
************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of the work assigned by defendant-employer, plaintiff has contracted bilateral carpal tunnel syndrome and reflex sympathetic syndrome. Said diseases were contracted due to causes and conditions that are characteristic of and peculiar to plaintiff's employment and are not ordinary diseases of life to which the general public is equally exposed outside of the employment. Plaintiff has developed compensable occupational diseases within the meaning of N.C. Gen. Stat. § 97-53(13).
2. As a result of said occupational diseases plaintiff is incapable of earning wages in her former employment or any other employment and is entitled to temporary total disability compensation in the amount of $351.38 per week for the period of time from July 20, 1994 through the date of this hearing and continuing until such time as plaintiff has been released to return to work or further orders of the Industrial Commission after a hearing has been had in this matter.
3. Plaintiff's average weekly wage at the time she sustained said occupational diseases was $527.04, yielding a compensation rate of $351.38. N.C. Gen. Stat. § 97-2(5).
4. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the occupational disease she sustained.
********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to counsel fees hereinafter approved, defendants shall pay to plaintiff compensation benefits at the rate of $351.38 per week for the period from June 20, 1994 through the date of this hearing and continuing until such time as plaintiff is no longer disabled and has returned to work or until further orders of the Industrial Commission. As much of said amount as has accrued, payment shall be made in a lump sum.
2. A reasonable attorney fee in the amount of 25 percent of the compensation approved and awarded for the plaintiff is approved and allowed for plaintiff's counsel. The attorney's fee shall be deducted from the compensation payable to plaintiff and shall be paid directly to plaintiff's attorney.
3. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of the occupational diseases she sustained. Payment shall be made after defendants have submitted bills for said medical services to the Industrial Commission and said bills have been approved by the Industrial Commission.
4. The issue of what amount of permanent disability, if any, is due the plaintiff shall be reserved for subsequent determination.
5. Defendants shall pay the costs.
 S/ ____________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
S/ ______________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/db